


620 E. Broad Street
Columbus, Ohio 43215
Phone (614) 242-4242
Fax (614) 242-4243
Toll Free (800) 235-0188
www.dvslv.com

June 15, 2006

VIA FAX NUMBER (614) 464-2634
AND REGULAR U.S. MAIL

Stuart W. Harris, Esquire
Kegler, Brown, Hill & Ritter
65 E. State Street, Suite 1800
Columbus, Ohio 43215-4292

**RE: Your Client: Southern Electric Supply Co., Inc. d/b/a Rexel Elgee, Inc.**
**Projects: Honda of America Manufacturing Co.**
**1.) Building #7 Expansion**
**2.) Building #9 New Construction**
**Case: Southern Electric Supply Co., Inc. d/b/a Rexel Elgee, Inc. –v- Lienguard, Inc. et al. U.S. Distirct Court, Southern District of Ohio Case No. C2-05-442.**

Dear Mr. Harris:

The purpose of this letter is to respond to your request for a formal opinion supplementing my initial letter of opinion dated February 7, 2005. After reviewing and studying the various depositions and documents that have become available as a result of the discovery in this matter, I believe a supplemental report is in order. As you know from my earlier letter and your recent request, I had a number of documents and exhibits to examine and review as part of my initial opinion. Those documents included:

1.) The original Notices of Commencement for Building Number 7 and Building Number 9.
2.) Defendant Rudolph/Libbe, Inc.'s Motion for Leave to file Motion for Summary Judgment Instanter.
3.) Defendant Rudolph/Libbe, Inc.'s Motion for Summary Judgment, which included:
    a.) Accompanying Case Law,
    b.) Affidavits of Bruce Ohlinger, Wendy McCallister, Greg Stewart and Gary Haas,
    c.) Exhibits A-O,



4.) Plaintiff's Cross-Motion for Summary Judgment and Memorandum Contra to Defendant Rudolph/Libbe, Inc.'s Motion for Summary Judgment, which included:
   a.) Accompanying Case Law
   b.) Accompanying Exhibits and Affidavits
5.) The Decision and Judgment Entry Denying Motions for Summary Judgment
6.) Court Order Resulting from Scheduling Conference
7.) Letter ordering matter to mediation
8.) Memorandum of Facts prepared by you with accompanying Exhibits
9.) Lienguard's letter to Rexel concerning price increases
10. The Agreed Pre-Trial Order

Since the date of my initial report, I have had the opportunity to review and study a number of additional documents and exhibits. These documents included:

1.) The January 6, 2006 formal opinion of Barry J. Miller the Expert named by Lienguard and Alan Popper.
2.) The printed deposition of Barry J. Miller with accompanying Exhibits
3.) I also attended the second half of Mr. Miller's deposition on June 7, 2006 so that I would know what it covered while preparing this supplemental report.
4.) A draft of my deposition with accompanying Exhibits
5.) The deposition of Allan B. Popper with accompanying Exhibits
6.) The deposition of Janis Lundquist with accompanying Exhibits
7.) Mr. Rosenberg's letter of January 6, 2006
8.) Mr. Rosenberg's letter of May 23, 2006 commenting upon the nature and quality of my deposition.
9.) Kegler, Brown, Hill & Ritter invoices to Rexel on this matter.

After review and examination of the above items and after reviewing my initial report, I have decided to supplement my initial report by addressing four specific concerns. First, I want to specifically address the application of O.R.C. §1311.08 and the Ulmer & Berne case to the facts surrounding the projects in question and my opinion as to the validity of the argument presented in the Plaintiff's Cross-Motion for Summary Judgment and Memorandum Contra to Defendant Rudolph/Libbe, Inc.'s Motion for Summary Judgment. Second, I want to address and give my opinion as to Mr. Miller's interpretation of the Mechanics' Lien Statutes and concepts of ownership as expressed in Mr. Miller's formal opinion and during his deposition. Third, I want to address the concept of a "late" Notice of Furnishing as discussed by Janis Lundquist in her deposition on page 90 and thereafter. Finally, I want to again address the concept of "Overkill" as expressed by Janis Lundquist in her deposition.

The Ulmer & Berne case cited in the various motions and cross-motions of the plaintiff's underlying case, refers to and quotes General Code §8316 at length as being the relevant statute. [26 Ohio N.P. (n.s.) 257; 1923 WL 2058 (Ohio Com. Pl.)] General Code §8316 is in large part the ancestor of today's O.R.C. §1311.08. The Ulmer & Berne

case while decided in December of 1923 has a very thorough discussion of a number of the concepts involving mechanics' liens and several of the mechanics' lien statutes. The Ulmer & Berne case analysis has stood the test of time on many issues and has become a benchmark case involving many of the modern day mechanics' lien concepts. It can however be a mistake to rely upon and use early Ohio case law to interpret the modern statutes. In the underlying case, Rexel was using the Ulmer & Berne decision to interpret and define concepts that did not exit in Ohio's Mechanics' Lien statutes until the modern statutes were passed and signed into law on January 9th 1991. The statutes became effective and apply to all construction contracts entered into after January 1, 1992. The improvements described in the Notices of Commencement that were prepared and recorded in this case all appear to be subject to the modern statutes.

The concepts of a Notice of Commencement and a Notice of Furnishing were introduced into Ohio Mechanics' Lien statutes at that time. Prior case law referring to the previous O.R.C. §§1311.04 & 1311.05 became obsolete unless they were being specifically applied to the pre-1992 statutes. The Ulmer & Berne case and specifically O.R.C. §1311.08 should not be blindly used to interpret modern O.R.C. §§1311.04 & 1311.05. The modern statutes also define an improvement for the first time in O.R.C. §1311.01(J). Under the modern statutes the statutory scheme is such that if the Owner that has contracted for an improvement wishes to limit potential liens and avoid "hidden" liens the Owner that contracted for the improvement must record a Notice of Commencement as provided in O.R.C. §1311.04. Unstated in that scheme is the right of an owner, within the definitional limits of O.R.C. §1311.01(J) to define and limit the extent of an "improvement".

I believe that as long as the improvement, described in a Notice of Commencement by the owner who contracted for it, satisfies the definition of an improvement contained in O.R.C. §1311.01(J), the owner is entitled to file a separate and distinct Notice of Commencement for each such improvement. To say that the Owner must, because of O.R.C. §1311.08 treat separately distinguishable improvements as defined in O.R.C. §1311.01(J) as one improvement ignores the fact that the modern statutes were enacted after O.R.C. §1311.08 and as a result O.R.C. §1311.08 should not be used or interpreted as limiting the concepts introduced into Ohio's scheme of Mechanics' Lien as part of the modern statutes. I believe that O.R.C. §1311.08 could be used by an owner that wished to do so as the basis for combining two or more improvements into one Notice of Commencement. In fact, in the third Honda Notice of Commencement that came to light during the various depositions, Honda R & D Americas, Inc., did just that when it combined the construction, fabrication and expansion of Buildings #2, #4 and #5 into one Notice of Commencement. If you review all three Notices of Commencement, you will note that Honda R & D Americas, Inc. had a business purpose in dividing the reconstruction of the research facility into three separate improvements. The Notices of Commencement involved, clearly show a different mix of original contractors for each improvement. O.R.C. §1311.08 is now under the modern statutes a tool of the Owner that permits it to combine what could be two or more independent improvements into one Notice of Commencement. O.R.C. §1311.08 does

not force the owner to do so, but when an owner does record a Notice of Commencement that describes more than one improvement, O.R.C. §1311.08 helps lien claimants by defining the extent of their lien rights.

Next a clear and concise reading of the Ulmer & Berne case shows that the case was misapplied to the facts in question when the Kegler Firm used it as the basis for arguing that a second Notice of Furnishing was not needed on the various Honda improvements. To the extent that the answers in my deposition are inconsistent with this supplemental report, I apologize. I had not read and studied the case in depth for a number of years. The issue is one of properly defining and applying the concept of "one general contract". The Kegler Firm having been put in the precarious position of having to defend liens that either did not have any Notice of Furnishing or had a bad Notice of Furnishing was forced to ignore the fact that the Notice of Furnishing which was served was in fact bad and then some how argue that it applied to both projects. Their problem was further magnified by the fact that the only Notice of Furnishing they could rely upon named the fee owner as the interested party. They thus had to file liens upon the interests of the fee owner in order to avoid spotlighting the problems that existed with the Notice of Furnishing.

After confirming that Rudloph/Libbe had a base contract to do a significant portion of the work on the Honda R & D Americas, Inc., research facility buildings they decided to argue O.R.C. §1311.08 and the Ulmer & Berne case supported their liens. If you will recall, I pointed out in my first report that I felt their argument to be tenuous at best. I did not go beyond my initial conclusion at the time, because it was not the focus point of the requested opinion.

The Ulmer & Berne case clearly defines the term "one general contract" as it was used in General Code §8316 and should be used in modern O.R.C. §1311.08, but the Ulmer & Berne case clearly limited its analysis to the applicability of the concept to the lien claimant and specifically states when applying General Code §8316 to the lien of the Plumbing & HVAC contractor that had a separate contract for each of three buildings that were being built by the Owner, Portage Construction Company, at the same time and on contiguous parcels of land, "the test is not what was within the minds of the officers of Portage Construction Company, but did the Kinnear-Russell Plumbing & Heating Company do its work and furnish its materials under one general contract, as it must do to take advantage of Section 8316." [26 Ohio N.P. (n.s.) 257; 1923 WL 2058 (Ohio Com. Pl.) at page 29]. Earlier the court wrote in its decision, "So the question is not, did someone else have one general contract, but did the claimant, Kinnear-Russell Plumbing & Heating Company, have one general contract." [26 Ohio N.P. (n.s.) 257; 1923 WL 2058 (Ohio Com. Pl.) at page 27]. The court went on to find that Kinnear-Russell Plumbing & Heating Company had three separate contracts and thus should have filed three separate liens instead of one lien.

The Ulmer & Berne case is even more interesting in that it went on to determine that a lumber yard, the Brown-Graves Company, did in fact have one general contract

and was thus entitled to file one lien on all three buildings in question. Reading the case properly, it becomes clear that the case holds that application of the concept of "one general contract" must be applied to the lien claimant and not the general contractor for the project. In this case Rexel sold all of its material to Superior for specific projects pursuant to specific purchase orders that referred to Superior's project numbers. The purchase orders were issued by Superior. Rexel accounted for the sales by project number and billed separately. Rexel clearly did not have "one general contract" as defined in the Ulmer & Berne case. Also from the information contained in the affidavits and related documents, it appears that Superior also had separate contracts to perform work on the separate improvements listed in the various Notices of Commencement from Rudolph/Libbe. Finally, the Ulmer & Berne case cannot be used to apply the argument that the improvements in question were constructed under Rudolph/Libbe's "one general contract" thus entitling the lien claimants to file one lien on all of the projects because there was no general contractor in the Ulmer & Berne case and the court clearly applied the concept only to the contract of the various lien claimants. I took the time to also examine the more recent cases that cite the Ulmer & Berne case on the issue of "one general contract". I could not find any that apply the concept to the contract of the general contractor. The case law appears to be limiting the application of the "one general contract" rule established in the Ulmer & Berne case to the contract of the lien claimant.

I do not believe that either O.R.C. §1311.08 or Ulmer & Berne case itself apply to the liens of Rexel in this matter. I believe that a second Notice of Furnishing should have been sent out by Lienguard on behalf of Rexel to Honda R & D Americas, Inc., to protect the materials sold to Superior and used during the completion of Superior's work on Building Number 9. As I indicated during my deposition, the Notice of Furnishing could have also been sent to American Honda Motor Company, Inc., but I believe that a Notice of Furnishing sent to Honda R & D Americas, Inc., would have been sufficient.

Next, I would like to address and review my position as to the Notice of Furnishing sent by Lienguard and Alan Popper to cover materials sold to Superior by Rexel for use on and incorporation into Building Number 7 which was an expansion of an existing building. O.R.C. §1311.04(A)(1) states, "Prior to the performance of any labor or work or the furnishing of any materials for an improvement on real property which may give rise to a mechanics' lien under §§ 1311.01 to 1311.22 of the Revised Code, the owner, part owner, or lessee who contracts for the labor, work, or materials shall record in the office of the county recorder for each county in which the real property to be improved is located a notice of commencement in substantially the form specified in division (B) of this section." (Underlining added). O.R.C. §1311.01 states in part, "As used in §§ 1311.01 to 1311.21 of the Revised Code:". Further O.R.C. §1311.01(A) states that, ""Owner," "part owner," or "lessee" includes all the interests either legal or equitable, which such person may have in the real estate upon which the improvements are made, including the interests held by any person under contracts of purchase, whether in writing or otherwise." Thus the definition of "Owner" contained in O.R.C. §1311.01(A) does apply to and must be used while interpreting O.R.C. §1311.04. Next, O.R.C. §1311.04(B), begins by stating that, "The notice of commencement required

under division (A) of this section shall contain, in affidavit form, ..." (Underlining added). Finally, one should look to O.R.C. §1311.04(B)(3), which states, that the Notice of Commencement must include "The name, address, and capacity of the owner, part owner, or lessee of the real property contracting for the improvement". Thus by definition and sworn statement, the Honda Notices of Commencement represent that both Honda R & D Americas, Inc. and American Honda Motor Company, Inc., are in some way first "contracting parties" and second that they are "owners". Thus by preparing the Notices of Commencement and identifying itself for purposes of the Notices of Commencement, as a contracting party Honda R & D Americas, Inc., is in a sworn affidavit representing to the public first, that it is an Owner as defined in the statute and that second that it contracted for all, or part of the improvements described in the Notices of Commencement.

All of the Notices of Commencement suggest that Honda R & D Americas, Inc., is in fact a tenant of American Honda Motor Company, Inc., and that American Honda Motor Company, Inc., is its landlord. When used together the words landlord and tenant are synonymous with lessor and lessee in any language. As expressed in the Honda Notices of Commencement the relationships and the indicated interests clearly state that Honda R & D Americas, Inc., and American Honda Motor Company, Inc., are owners as defined O.R.C. §1311.01(A) and for purposes of O.R.C. §1311.04.

In order to understand why Honda of America Manufacturing Co., appears is the Honda Notices of Commencement, you have to look at and study O.R.C. §1311.04(B)(4) which states that the Notice of Commencement must include, "The name and address of the fee owner of the real property, if the person contracting for the improvement is a land contract vendee or lessee". First, once again you have a representation just by the fact that the "fee owner" is listed in the Notice of Commencement that one or more of the contracting parties is a lessee. Second, by not including the fee owner in the list of contracting parties, Honda R & D Americas, Inc., is representing that the fee owner has not contracted for any part of the improvements. From that, one can conclude that the fee owner while having an interest in the real estate upon which the improvements are located or are to be located has no interest in the improvements identified in the various Honda Notices of Commencement.

To carry Mr. Miller's analysis to its logical conclusion, Mr. Miller would have potential lien claimants serve their Notices of Furnishing upon the fee owner, Honda of America Manufacturing Co., someone that has not contracted for the improvements. Mr. Miller's own analysis belies his report on page 4 where he quotes the Linworth Lumber case. Mr. Miller is selectively reading individual statutes and ignoring the provisions and definitions of other statutes in order to justify sending a Notice of Furnishing to someone that has not contracted for the improvement.

As I read the statutes there are only two owners of the improvements listed in the Notice of Commencement. They are Honda R & D Americas, Inc., and American Honda Motor Company, Inc. They are the "owners" that have an interest in the avoiding "hidden

liens" and they are the parties that should have received Notices of Furnishing. In the situation where there are more that one owner listed in the Notice of Commencement and where there is no designee listed in the Notice of Commencement, O.R.C. §1311.05 provides that the service of a Notice of Furnishing upon the first Owner named in the Notice of Commencement is sufficient. Honda R & D Americas, Inc., being the contracting party that prepared and signed the Notice of Commencement is arguably the first owner named in the Notice of Commencement. Therefore, at the least, I would have served Honda R & D Americas, Inc., with a Notice of Furnishing. I now see that it can be argued that American Honda Motor Company, Inc., was the first owner named in the Notice of Commencement, therefore I do not object to serving both parties with Notices of Furnishing just to make sure nobody claims that one Notice of Furnishing was not sufficient. Since Honda of America Manufacturing Co., is truly the last owner listed in the Notice of Commencement, I do not see any argument for serving Honda of America Manufacturing Co., with a copy of the Notice of Furnishing. Serving Honda of America Manufacturing Co., with a copy of the Notice of Furnishing while serving the other two parties could not have hurt. It is only when Honda of America Manufacturing Co. is the only party served with the Notice of Furnishing that the notice becomes defective.

As to the "late" Notice of Furnishing as identified in Janis Lundquist's deposition. There is no such thing. A Notice of Furnishing can be served at any time by anyone. The issue is one of whether it will have the effect of preserving lien rights. A Notice of Furnishing can be served in excess of 21 days after the date of first delivery. It just will not preserve lien rights for work performed or materials delivered prior to the 21 day period, but it can and should be served "late" if there is more work to be done or materials to be delivered. If the lien claimant did not know, it would have been wise to serve the "late" notice. See O.R.C. §1311.05(D)(1). In her deposition, Janis Lundquist specifically states that a late notice should not be sent. She admits having refused to do so. Additionally, in her deposition, she suggests that she colluded with Ms. Compton to give Rexel the false sense of security for the sake of Compton's job. If Ms. Lundquist gave the advice she said she gave, it was bad. If she made up the advice she gave in her letter, it was also bad. There was a second improvement as defined by the statutes. The Owners had a reason for separating the improvements into separate Notices of Commencement, in that there were different original contractors performing the work on this improvement. Finally the second Notice of Commencement was recorded. A second Notice of Furnishing was needed and Janis Lundquist did not understand enough about the situation to be able to give Rexel good advice.

Sometimes it is right to practice law in such a way that is not the best or most accurate reading of the law. In this case I have already stated my opinion. I believe that it would have been sufficient to have sent a Notice of Furnishing to Honda R & D Americas, Inc., at the address indicated in the Notice of Commencement. I cannot argue with anyone that would want to be more conservative and send the Notices of Furnishing to both Honda R & D Americas, Inc., and American Honda Motor Company, Inc. I can even understand sending Notices of Furnishing to all three Honda's; Honda R & D Americas, Inc., American Honda Motor Company, Inc. and Honda of America

Manufacturing Co., just to "make sure", but I do not understand refusing to send a Notice of Furnishing to anyone when you have a copy of the Notice of Commencement stating that the work on Building Number 9 is a separate improvement. It just does not make sense. Ms. Lundquist literally condemned her client to having to fight an expensive legal battle and loose. A battle, she now claims she has no responsibility for and does not want to be held accountable for her decision and the advice she gave her client. Her deposition is replete with distain for the work of attorneys, but yet she does not want any responsibility for giving any one bad advice. She even refuses to carry errors and omissions insurance, because she can pay for a lot of legal defense with the premiums she is saving. What about the client she has injured? More importantly, please remember that this was all created for the cost of serving one "late" Notice of Furnishing. A "late" notice, that her client had requested and was willing to pay Lienguard to serve.

Why? Better yet, why not serve the late notice? If it would not have any effect, then send a letter to the client saying that it would not be any good. At least then it would have been served and this matter could have been avoided. If Lienguard did what it should have done and in fact started to do when the last Honda Notice of Commencement arrived the lien for Building Number 9 would not have been in question. I can see Lienguard being conservative, but I think that they should have served every owner on each of the notices if they truly wanted to be nothing more than scriveners. Anybody can be a scrivener. Lienguard said it was more than a scrivener. In that case Lienguard should have done it right or at least have been conservative enough not to have done it wrong.

As with the first report, I have reviewed the Kegler Firm's invoices for the work performed while preparing and defending the Rexel liens filed against the Honda Projects. I believe that the fees were reasonable and I still believe that all of the legal fees incurred by Rexel during that litigation over the validity of the liens should be offset against the amount of your settlement. They would thus add to the damages Rexel suffered in this matter. Let me again remind you that the Notice of Furnishing that was prepared by Lienguard was defective in that it was not sent to the contracting party. I would have expected to see an argument concerning its validity at some time during the litigation had the matter not settled.

As before, I believe that Lienguard and Alan Popper established themselves as experts in the construction industry regarding the nature and extent of the Mechanics' lien statutes of 48 of the 50 states. Additionally, they represented themselves to be experts on both state and federal bond claims. They then acted in a negligent manner while advising Rexel in this matter. I believe that their advice constitutes legal advice regarding Ohio laws, Ohio construction projects and lien related documents that need to be properly prepared. They charged a fee for this service without being properly licensed to practice law in Ohio. Alan Popper quite literally allowed non-employees to prepare documents that he was responsible for signing without any form of independent control or oversight. Additionally, Alan Popper set up a pattern of representation of Rexel when preparing and serving Notices of Furnishing. Rexel was entitled to rely upon the pattern of representation that previously existed. At the very least, Alan Popper had a duty to

make sure that Lienguard was properly and accurately advising its clients when it advised Rexel not to file a Notice of Furnishing for the Building Number 9 improvement.

I hope this letter satisfies your request for my opinion in this matter. I have recently reviewed and revised my curriculum vitae. As a result, I have taken the liberty of sending you a copy in an effort to substantiate my right to form an opinion on matters involving Ohio's Mechanics' Lien statutes and the practice of law as it applies to Mechanics' Liens.

If you have any questions or comments, feel free to give me a call.

Sincerely,

Mark Decker

MD/pl
Enc.

# MARK DECKER

**Attorney-at-Law**

**DECKER, VONAU, SEGUIN, LACKEY & VIETS CO., L.P.A.**

620 East Broad Street
Columbus, Ohio 43215
(614) 242-4242 (614) 242-4243 (Facsimile)
mdecker@dvslv.com


## PROFESSIONAL ORGANIZATIONS AND MEMBERSHIPS

| | |
|---|---|
| ▸ November 3, 1973 | Admitted to Ohio Bar |
| ▸ May 1, 1974 | Admitted to U.S. District Court<br>Southern District of Ohio |
| ▸ Member | Columbus Bar Association<br>1994-95 Construction Law Committee Chairman<br>Ohio State Bar Association<br>Real Property Section<br>American Bar Association<br>(Forum On The Construction Industry) |

## CONSTRUCTION INDUSTRY POSITIONS

| | |
|---|---|
| ▸ Board Member (1978 to 1989) | Board of Examiner's<br>for General and Limited Sign Erectors<br>for the City of Columbus |
| ▸ Panel Member (Since 1988) | American Arbitration Association (AAA)<br>Panel of Arbitrators for Construction Disputes<br>Currently serving as a Member of the Central Ohio<br>Construction Advisory Council |
| ▸ Chairman (1993-1994) | Builder's Exchange Law Group of Central Ohio (BX) |
| ▸ Chairman (1994-1996) | Construction Law Committee of the<br>Columbus Bar Association (CBA) |

## CONSTRUCTION INDUSTRY ORGANIZATIONS AND MEMBERSHIPS

| | |
|---|---|
| ▸ Member | Builder's Exchange of Central Ohio |
| ▸ Member | Building Industry Association of Central Ohio (BIA) |
| ▸ Member | AEC/IEC – Central Ohio Chapter |
| ▸ Member | American Subcontractors Association Central Ohio Chapter (ASA) |
| ▸ Member | Painting & Decorating Contractors of America, Central Ohio Chapter (PDCA) |
| ▸ Counsel | Associated Plumbing & Hydronics Contractors of Central Ohio (APHC) (Membership not available to non-plumbers) |
| ▸ Member | Plumbing Heating Cooling Contractors Association Central Ohio Chapter (PHCC) |
| ▸ Member | Air Conditioning Contractors Association, Central Ohio Chapter (ACCA) |
| ▸ Member | Central Ohio Utility Contractors Association (COUCA) |

## PROFESSIONAL PRACTICE & EXPERIENCE

| | |
|---|---|
| ▸ December 1986 to present | Founder and President of Decker, Vonau, Seguin, Lackey & Viets Co., L.P.A., a legal professional association<br>General Practice of Law/Business Representation<br>Emphasis in construction industry, Mechanics' Lien and real estate related matters |
| ▸ October 1980 | Self Employed to December 1986<br>Mark Decker & Associates<br>Attorneys at Law |

General Practice of Law
Emphasis in construction industry mechanic lien and real estate related matters.

- May 1978 — Associate/Employee to October 1980
  Kelley & Keller Co., L.P.A.
  Attorneys at Law
  General Practice of Law
  Emphasis in real estate and construction industry related collection matters

- November 1973 — Associate/Employee to May 1978
  Kagay, Albert & Diehl
  Attorneys at Law
  General Practice of Law
  Emphasis in real estate, construction industry and Mechanics' Lien related matters

## EDUCATION

- 1970-1973 — Ohio State University College of Law
  Graduated Top 10% of Class
  Cum Laude
  Order of the Coif
  Doctor of Jurisprudence

- 1966-1970 — Ohio Dominican College
  Graduated Cum Laude
  Bachelor of Arts in Political Science

- 1962-1966 — Bishop Hartley High School
  Columbus, Ohio
  National Honor Society

## SPEAKING/TEACHING EXPERIENCE/PUBLICATIONS

**Professional Education Systems Institute, LLC**
EauClaire, Wisconsin
Mechanics' Liens and Construction Topics
Faculty Member - 1984 through present
Responsible for preparation of Mechanics' Lien

Portion of Seminar Book and presentation

**Professional Education Systems Institute, LLC**
EauClaire, Wisconsin
Ohio Residential Construction: Issues and Answers
Faculty Member - 2003 through present
Program Developer – Authored Program Sections

**Builders Exchange of Central Ohio**
Construction Law Seminar
1984 through 1990 Faculty Member
Topic - Ohio Mechanics' Lien Law

Mechanics' Lien Seminar 1991-present
Subcontractors and Materialmen

Ohio Construction Continuing Education Program
For Ohio License Holders
Construction Contracts, Claims and Documentation
August 2004

**Speakers Bureau - Columbus Bar Association**
Topics - Real Estate Transactions
Mechanics' Lien Law
Construction Related Issues and Problems

**Ohio Certificate Renewal** Construction Law Instructor
1999 – 2004
Topic – Construction Contracts Related Documents
Topic – Ohio Mechanics' Liens
Topic – Alternate Dispute Resolution

***The Credit Manager's Survival Kit***
Madison, Wisconsin
Responsible for preparation of Mechanics' Lien section for the State of Ohio- 1994 through 2001 Editions

**Miscellaneous -** Numerous trade and association presentations and newsletter columns on topics involving Mechanics' Liens and Construction Industry in general.

## ARBITRATOR EXPERIENCE AND TRAINING

### EXPERIENCE

1988-Present — Member of American Arbitration Association's Construction Panel for construction related disputes, including cases involving disputes from $5,000.00 - $700,000.00, Fast Track disputes, and consumer protocol disputes.

1996-Present — Member of the American Arbitration Association Central Ohio Advisory Council.

### ARBITRATOR'S TRAINING

December, 2005 — Managing Cases involving self-represented parties.
November, 2004 — Arbitration Awards: Safeguarding, Deciding & Writing Awards.
March, 2002 — AAA Construction Industry Arbitrator II Training.
May, 1997 — AAA Construction Arbitrator Training
December, 1996 — AAA Fast Track Arbitrator Training.

### DRAFTING

December, 2000 — Drafted Columbus Bar Association Program documents including, Arbitrator Bio, Arbitration Agreement, and Guidelines for Arbitrators.

## LEGISLATION

**1989-Present** — Actively involved with the Ohio legislature and others in the drafting of the modern provisions of the Mechanics' Lien statutes of Ohio.

Actively involved with the Ohio legislature and others in the drafting of Senate Bill 338, the technical amendments bill submitted to correct and clarify the Ohio's Modern Mechanics' Lien Statutes.

Numerous - New Mechanics' Lien Law Presentations to Bar Associations, Builders Organizations, Law firms, Lender's Groups, Title Associations, Material Suppliers, Subcontractors, and others. Authored numerous articles which have appeared in trade magazines and papers explaining and discussing the new Mechanics' Lien Law - *Ohio Home Builders and Associated General Contractors*.

**:OGNITIONS**

ɔr Association, Central Ohio Chapter (ASA) –
: Year Award.
ı Systems Institute, LLC (PESI) – Excellence in

ɔr Association, Central Ohio Chapter (ASA) –

**E CLIENTS**

from the entire construction industry. They
Material Suppliers who build all types of
ners.

**'ERSONAL**

Hobbies:
Reading Military History
and Civil War Era, Wood
Carving, Billiards, Poker

**IES**

ioy Scouts of America. Member of both the
nton Council Chapter. Active parishioner of
lumbus, Ohio.

Testified before ı
legislation invol·
testified on behal
passed into law d

Testified before
legislation involv
testified on behal

Participated in th
of H.B. 487 that

**EXPERT WITN**

1997 — Dale Senn dba
Company, et al.
Summit County
Case Number: C

1997 — PGI Mechanical
Franklin County
Case Number: 9

1997 — Shepherd Excava
U.S Bankruptcy
Eastern Division
Chapter 7 Case
Adversary Proce

1995 — Frederick M. Ni
al.
Cuyahoga Coun
Case Number: 2

2006 — Southern Electr
Lienguard, Inc.,
U.S. District Co
Case No. 2:05C