```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

| | | |
|---|---|---|
| SOUTHERN ELECTRIC SUPPLY COMPANY, INC. d/b/a/ REXEL ELGEE, INC., | : | Case No. 05-cv-442 |
| Plaintiff, | : | Judge Holschuh |
| v. | : | Magistrate Judge Kemp |
| LIENGUARD, INC., et al., | : | |
| Defendants. | : | |

## OPINION AND ORDER

In this diversity case, plaintiff Southern Electric Supply Co., Inc. d/b/a Rexel Elgee, Inc. ("Rexel") alleges that Defendants Lienguard, Inc. and Allan Popper ("Defendants") failed to provide Rexel with proper documents to perfect a valid mechanic's lien under Ohio law, which resulted in Rexel's financial loss.  The parties have conducted discovery and expert witnesses and reports have been disclosed.  Defendants have now moved to strike Rexel's Supplemental Witness Disclosure and Supplemental Expert Report.  Alternatively, Defendants seek fees and costs if the motion to strike is denied to cover their expenses incurred in deposing relevant witnesses.

## I.   BACKGROUND

The present action arises from damages Rexel allegedly incurred when it settled litigation which it had brought against Honda of America Manufacturing and Rudolph-Libbe, Inc. in the Court of Common Pleas, Union County, Ohio, Case No. 2004 CV-0094. (Pl. Resp. p.3; R. 43).  Rudolph-Libbe was the general contractor to Honda, and Rexel was the supplier to one of Rudolph-Libbe's sub-contractors.  Rexel had previously retained Defendants for advice on mechanic's lien law and to prepare and transmit relevant documents.  (Id.).  At the beginning of the Honda projects, Rexel hired Defendants to prepare and transmit the necessary documents to perfect mechanic's liens.  Rexel alleges

that Defendants failed to properly prepare two notices of furnishing (mandatory documents to perfect mechanic's liens), which weakened Rexel's position vis-a-vis Honda.  Rexel claims that this weakened stance, caused by Popper, forced Rexel to enter into an unsatisfactory settlement agreement.  (Id. at 4).

On March 18, 2005, Rexel filed this action, alleging Defendants provided Rexel with improper legal advice for proper lien documents resulting in Rexel's financial loss. *Southern Electric v. Lienguard et al.*, Court of Common Pleas, Franklin County, Ohio, Case No. 05CVH-03-3068.  On May 6, 2005, Defendants removed the case to federal court.  On August 5, 2005, following an initial Rule 16 conference, the Court ordered discovery completed by March 31, 2006.  (R. 15).

Rexel retained attorney Mark Decker as its liability expert for this case.  Mr. Decker had submitted an expert report to Rexel's attorney on February 7, 2005 prior to the filing of this action.  On August 19, 2005, Defendants issued a subpoena duces tecum for Mr. Decker to produce his file materials for this case. Defendants subsequently wrote Rexel's counsel several letters urging compliance with discovery deadlines and requests.  (Pl. Mot. p. 4; Ex. 12, 13; R. 39).  Defendants filed a motion to compel discovery on September 30, 2005 (R. 16, 17), which Rexel countered with a motion for protective order.  Rexel also sent Defendants a fax offering to settle the discovery dispute.  (R. 41, Ex. 16).  October 14, 2005 the parties participated in a telephone conference before this Court, which resulted in the October 28, 2005 joint entry resolving the pending discovery motions as follows:

    (1)  Mr. Decker would make all disclosures mandated by the Civil and Local Rules no later than October 22, 2005;
    (2)  Rexel would produce all documents relating to the Honda America litigation no later than October 28, 2005;
    (3)  Rexel would produce all other documents responsive to Mr. Popper's discovery requests and/or which bear upon its claims against Mr. Popper no later than November 14, 2005. (R. 22).

On November 14, 2005, Rexel's counsel produced what Defendants considered a "sampling" of documents showing that Mr. Popper provided legal advice/services to Rexel and its predecessors in interest.(R. 41; Ex. 21).  One week later, Defendants requested to inspect additional records so the parties could commence depositions.  (Def. Mot. p. 6; R. 39).  In response to this letter, Rexel replied that due to scheduling conflicts, the remaining documents would not be available until the week before Christmas.  (R. 41, Ex. 23).  After further correspondence, the parties agreed to move for a time extension to complete discovery and to submit dispositive motions.  That motion was granted on January 30, 2006, and the Court established a new discovery cutoff of May 15, 2006, and a dispositive motion deadline of July 17, 2006.  (R. 25).  On May 2, 2006, these deadlines were extended to June 15, 2006 for discovery and August 15, 2006 for dispositive motions. (R. 31).

Defendants deposed Mr. Decker, Rexel's expert, on May 5, 2006.  (Def. Mot. p. 7; R. 39).  On May 22, 2006 Rexel filed a supplemental disclosure of witnesses reserving the right to identify and call Dennis Jaketic, Mark Daniels, Susie McCoy, and an unspecified "Business Records Custodian."  (R. 41; Ex. 32).  On the discovery deadline date, June 15, 2006, Rexel provided Defendants with a supplemental expert report from Mr. Decker.  (R. 41, Ex. 33).  In the current motion, Defendants ask the Court to preclude Rexel from using both these additional witnesses and Mr. Decker's supplemental report.

**II. LAW**

To preserve fairness during litigation, discovery requires parties to exchange, *inter alia*, relevant documents, evidence, and witness lists.  *See generally* Fed. R. Civ. P. 26. Supplementing previously disclosed materials or providing newly revealed information is also required.  Fed. R. Civ. P. 26(e). Updating incomplete materials must be done regardless of when the new information is uncovered.  However, discovery deadlines

create a finite temporal span in which to exchange materials. Prolonging the litigation process with endless updates or discovery revelations is antithetical to the purpose of Rule 26 and detracts from the public policy goal of efficient litigation.

The Court may levy severe penalties for parties who fail to make required disclosures pursuant to Rule 26(a) or who fail to supplement those disclosures pursuant to Rule 26(e). Fed. R. Civ. P. 37(c)(1). The Court may strike the non-disclosed evidence or impose other appropriate sanctions including, but not limited to, "requiring payment of reasonable expenses, including attorney's fee, caused by the failure.... Additionally, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure." Id. In the most egregious cases, dismissal of the entire action is permitted. Rule 37(b)(2)(C). While the Court is not required to impose any sanctions, the authorization to do so is broad.

Several factors may impact the Court's exercise of discretion when weighing potential penalties for discovery violations, including:

(1) The importance of the evidence;
(2) The prejudice to the opposing party of allowing the use of the undisclosed evidence;
(3) The possibility of curing the prejudice;
(4) The explanation, if any, for the party's failure to disclose the evidence; and
(5) The extent to which allowing the evidence would disrupt the trial.

United States v. $9,041,598.68, 163 F.3d 238, 252 (5th Cir. 1998); (first four factors); Bradley v. United States, 866 F.2d 120, 125 (5th Cir. 1989) (first four factors); see also Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067, 1073 (6th Cir. 1990) (quoting Regional Refuse Sys. v. Inland Reclamation Co., 842 F.2d 150, 155 (6th Cir. 1988)) (reversing default judgment against two of the defendants and noting that pertinent factors included "whether the adversary was prejudiced by the dismissed [or

4

defaulting] party's failure to cooperate in discovery, whether the dismissed [or defaulting] party was warned that failure to cooperate could lead to dismissal [or default], and whether less drastic sanctions were imposed or considered before dismissal [or default] was ordered"). Previous warnings by the Court should be considered in determining appropriateness of severe sanctions. See Bass v. Jostens, Inc., 71 F.3d 237, 241 (6th Cir. 1995). The primary inquiry should focus on distinguishing harmless failures to disclose from prejudicial non-disclosures. 6-26 Moore's Federal Practice - Civil § 26.27. There should be a direct relationship between the time before trial and findings of prejudice–as the trial date gets closer, the Court should be more critical of non-disclosures. Id; Tarlton v. Cumberland County Correctional Facility, 192 F.R.D. 165 (D.N.J. 2000) (finding delay can prejudice). Blocking a party from accessing evidence needed to fairly litigate an issue, claim, or defense constitutes the most important and obvious type of prejudice.

The syntax of Rule 37(c)(1), "in addition to or in lieu of," imparts discretion to the Court to choose the sanction's magnitude and intensity. Typically, if a party is precluded from presenting evidence, that party is often unable to maintain the claim or defense to which that evidence relates. The Sixth Circuit has held that dismissal of an entire action is the discovery sanction of last resort. Bank One of Cleveland, N.A., 916 F.2d at 1073 (dismissal for failure to cooperate in discovery is sanction of last resort and should be imposed only if failure is result of wilfulness, bad faith, or fault).

    **i.**    **Expert Witness Disclosure**

Unless otherwise stipulated by the Court, expert witness disclosures must be made ninety (90) days before the commencement of trial. Fed. R. Civ. P. 26(a)(2). Should the expert testimony be made solely to rebut other evidence, then the disclosures should be made no more than thirty (30) days after the disclosure

by the other party.  6-26 Moore's Federal Practice - Civil § 26.23.  The submission of a supplemental expert report in rebuttal to an opponent's expert report is not prejudicial as long as the supplementing expert is available to be deposed.  See Seton Co. v. Lear Corp., 2005 U.S. Dist. LEXIS 8963 (E.D. Mich. 2005) (finding the supplemental expert report was not offered in rebuttal, but even if it were, it would not be prejudicial because the expert had "reserved the right to supplement [his] report," and new data had become available to the expert that allowed him to be more accurate in projecting lost profits).  If experts, and the issues on which they will testify, are not timely disclosed, the Court may preclude the dilatory party from offering expert testimony at trial.  See King v. Ford Motor Co., 209 F.3d 886, 901 (6th Cir. 2000) (finding the district court did not err in excluding expert testimony on a particular subject because defendant's unexcused failure to disclose that its experts would testify on such an issue did not allow plaintiffs ample time to prepare properly).

### ii. Striking Evidence

Courts do not automatically strike evidence–even in the presence of bad faith by the non-moving party.  See Tarlton v. Cumberland County Correctional Facility, 192 F.R.D. 165 (D.N.J. 2000).  Nor should evidence be stricken if disclosures are submitted before the final close of discovery–particularly if opposing counsel ignored the opportunity to take depositions.  See K&D Distribs., Ltd. v. Aston Group (Mich.), Inc., 225 F.R.D. 550 (N.D. Ohio 2005) (denying motion to strike affidavits).  However, the Court may strike evidence if, balancing the appropriate factors, it concludes that such a sanction is warranted.

**III. DISCUSSION**

   **i.    Supplemental Expert Report**

Defendants claim that Mr. Decker's supplemental expert report includes opinions neither expressed during his deposition nor disclosed in his first expert report. Defendants argue that the late production of the supplemental expert report violates the Court's October 28, 2005 order, which provided that Mr. Decker would make all disclosures required by Civil and Local Rules by October 22, 2005. (Def. Mot. p. 9; R. 39). Rexel explains that the supplemental expert report was necessary to clarify Mr. Decker's previous deposition testimony given on May 5, 2006. (Pl. Resp. p. 6; R. 43). After Defendants' expert, Mr. Miller, was deposed on June 7, 2006, Rexel concluded that new legal arguments arose that required an update to Mr. Decker's initial report. Rexel also points out that despite Mr. Decker's being available for another deposition, Defendants have not sought to depose him again, nor have they asked for further discovery. Instead, Defendants simply sought to strike Rexel's supplemental expert report. Defendants counter that several issues addressed in the latest report were presented to Rexel well before Mr. Miller's deposition.

It is certainly possible that Mr. Decker may have been able to anticipate some of the issues addressed in his supplemental report prior to his May 5, 2006 deposition. Nevertheless, the Court hesitates to take the extreme action of striking the supplemental expert report. Mr. Miller's deposition may have revealed or made more apparent some issues not previously evident to Mr. Decker. Further, two of the issues that apparently spawned Mr. Decker's desire to supplement his report, "late notice" and "overkill," although they were discussed in Mr. Lundquist's deposition taken on April 25, 2006 (Def. Reply p. 4; R. 45), may not have been available in transcript form prior to the May 5, 2006 deposition. Thus, the Court cannot conclude that the timing of Rexel's production of the report was the product of

7

bad faith, and some justification for its late disclosure has been offered.

Because the discovery deadline has expired, Defendants assert that they have been unable to develop theories and testimony to respond to Rexel's supplemental expert report. Rexel, however, has not objected to the reopening of discovery in order to allow defendants to re-depose Mr. Decker.  Arguably, in order to avoid extending the discovery deadline, Rexel should have submitted the supplemental expert report earlier.  On the other hand, Defendants, upon receiving the supplemental expert report, could have immediately requested an extension in discovery, and that would have sufficed to cure any prejudice. Taking all pertinent factors into account, the motion to strike will be denied.

### ii. Supplemental Witness Disclosures

Defendants also object to Rexel's supplemental witness disclosure. (R. 41, Ex. 32).  According to Defendants, Rexel was aware that these witnesses had material information for over two years, yet failed to submit the supplemental witness disclosure until May 22, 2006.  (Def. Mot. p. 11, R. 39).  Defendants assert that this late disclosure not only prolongs the litigation, but gives a tactical advantage to Rexel.

Each party must disclose to the other each person likely to support claims or defenses and must seasonably supplement those disclosures.  Fed. R. Civ. P. 26(a), 26(e).  The relevant issue before the Court is whether Rexel's failure to disclose these witnesses until late in the discovery process was not seasonable. The short answer to that question is that there is no evidence from which the Court can find improper conduct on Rexel's part.

According to Defendants, the witnesses who were disclosed on May 22, 2006, were intended to resolve an issue created by Defendants' depositions of earlier-identified witnesses, none of whom, in Defendants' opinion, knew anything about how Rexel's

damages claim was calculated, why or how the underlying litigation was settled, how that settlement was apportioned, and what Lienguard's role was in causing Rexel to reach what it contends to be an unfavorable settlement.  Rexel counters that its damage claim is simply calculated based on the difference between the amount of its claim against Honda and the amount it eventually settled for, plus litigation expenses, and that it identified these additional witnesses only because Defendants have inserted new theories of defense into the case that these witnesses are needed to rebut.

Given the current state of the record, the Court has no evidence before it to validate either party's position.  It would not be proper to award sanctions based on speculation, so the Court will not do so.  Parenthetically, it does not appear that Defendants will incur any duplicative costs if they choose to depose these new witnesses, so that an extension of discovery should cure any prejudice.

**IV.  CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants' motions for sanctions (#s 39 and 42).  The parties are directed to confer and to submit a proposal for additional discovery that addresses the supplemental expert report and supplemental witness disclosures.

/s/ Terence P. Kemp
United States Magistrate Judge