**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **SOUTHERN ELECTRIC SUPPLY COMPANY, INC. d/b/a REXEL ELGEE, INC.,** | : | |
| | : | **Case No. 2:05-cv-442** |
| **Plaintiff,** | : | **Judge Holschuh** |
| **v.** | : | **Magistrate Judge Kemp** |
| **LIENGUARD, INC. et. al.,** | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Southern Electric Supply Company, Inc., d/b/a Rexel Elgee, Inc. ("Plaintiff") filed this breach of contract and legal malpractice action against Defendants Lienguard, Inc. ("Lienguard") and Allan Popper ("Defendant") to recover damages that allegedly stemmed from Lienguard and Defendant's failure to properly file notices of furnishing that would support valid mechanics liens on materials Plaintiff supplied for construction projects. This matter is currently before the Court on Defendant's Motion for Summary Judgment. (R. at 46). For the following reasons, Defendant's Motion is **GRANTED**.

I.      **Factual and Procedural Background**

In April 1999, American Honda Motor Company, Inc./Honda R & D Americas ("American Honda/Honda R & D") began construction on and renovation of multiple buildings on land in Union County, Ohio that it leased from Honda of America Manufacturing Company ("Honda Manufacturing"). (Def. Mem. of Law Supp. Mot. Summ. J. ex. 12, R. at 47). American Honda/Honda R & D contracted with Rudolph/Libbe, Inc. ("RLI") to be the general contractor for

the construction project.  In January and March of 2002, American Honda/Honda R & D and RLI executed amendments to their original contract that provided for, respectively, the expansion of an existing building, known as "Building No. 7," and the construction of a new building, to be known as "Building No. 9."  (Id.).  As required by law, before any work was performed or materials were furnished, American Honda/Honda R & D recorded notices of commencement ("NOC"s) with the Union County recorder.  The NOC for Building No. 7 was recorded on January 2, 2002, while the NOC for Building No. 9 was recorded on May 15, 2002.  (Compl. ex. 3, 4, R. at 1-4).  Both NOCs described the property as the "Honda R & D Americas, Inc." complex, identified American Honda/Honda R & D as the contracting party, and identified Honda Manufacturing as the owner of the property.  (Id.).

RLI subcontracted with Superior Electric Company ("Superior") to provide the electrical work for each project.  (Def. Mem. of Law Supp. Mot. Summ. J. ex. 12, R. at 47).  Superior then entered into numerous purchase order agreements with Plaintiff to supply materials to be used in the Building No.s 7 and 9 construction.  (Id.).  Prior to providing any materials to Superior, however, Plaintiff contracted with  Lienguard to have Lienguard file notices of furnishing ("NOF"s) with the Union County recorder to preserve Plaintiff's lien rights.

Lienguard is an Illinois corporation that "does . . . preliminary notices, public claim notices, bond notices, federal Miller Act notices and filing of mechanics liens in 47" states. (Janis Lundquist Dep. p. 6, Def. Mem. of Law Supp. Mot. Summ. J. ex. 2, R. at 47).  Defendant, from 1979 to 2005, was a licensed attorney in Illinois and was employed at the law firm of Popper & Wisniewski.  From 1984 to 2005, Defendant contracted with Lienguard to perform Lienguard's legal work.  (Allan Popper Dep. p. 8, 12-13, Def. Mem. of Law Supp. Mot. Summ. J. ex. 3, R. at 47).  This contract

provided that "Lienguard . . . agrees to give any and all legal work to be performed for Lienguard or any of its clients to Popper. . . . This includes the filing of mechanics liens as well as any other related or non-related legal work." (Id. p. 13). Pursuant to this contract, when Lienguard received work orders and NOCs from clients requesting NOFs, Lienguard would first input the information from the work order into a computer. Then, that information would be transmitted electronically to Defendant. If the client had provided a NOC, that would be faxed to Defendant as well. The computer program would take the information and create the NOF, which Defendant would review and compare with the NOC. Defendant would then sign the NOF as attorney and agent for the client. (Id. p. 21-25).

Plaintiff faxed a work order, including a copy of the NOC prepared by American Honda/Honda R & D, to Lienguard on May 2, 2002, asking Lienguard to serve a NOF for Building No. 7. Plaintiff's work order, like the NOC, described the jobsite property as "Honda R & D Americas, Inc." and listed Honda Manufacturing as the owner of the jobsite property. (Compl. ex. 1, R. at 1-4). Lienguard, pursuant to their agreement with Defendant, forwarded the information to Defendant, who then served the NOF on May 3, 2002. (Compl. ex. 8, R. at 1-4). The NOF was served on Honda Manufacturing, as well as RLI and Superior, and was signed by Defendant as attorney and agent for Plaintiff. (Id.). The NOF was not served on American Honda/Honda R & D.

Subsequently, Plaintiff submitted a second work order to Lienguard requesting that Lienguard serve a NOF for Building No. 9. The parties disagree slightly as to when this work order was actually sent and received. For the purposes of this motion, however, all that is relevant is that, on October 16th, 2002, Plaintiff received a fax from Janice Lundquist ("Lundquist"), Lienguard's vice-

president responsible for reviewing claims and accepting incoming orders, refusing to do a second NOF. The fax stated that "we [Lienguard] did the original Notice of Furnishing on 5/3/02. This Notice covers all subsequent shipments to the project since the whole Honda facility falls under one Notice of Commencement." (Compl. ex. 7, R. at 1-4). In her deposition, however, Lundquist states that the reason Lienguard declined to serve a second NOF was that Plaintiff was late in requesting it. (Lundquist Dep. p. 176, Def. Mem. Supp. Mot. Summ. J. ex. 2, R. at 47). Whatever the reason, however, the end result was that no NOF was served for Building No. 9. Most relevant to this Motion, Lienguard made this decision on its own. Defendant was never contacted by anyone from Lienguard or Plaintiff about preparing a NOF for Building No. 9. (Id. p. 238-39; Popper Dep. p. 115, id.. ex. 3; Cindy Westover Dep. pp. 136, 139, 145-46, id. ex. 7).

At the conclusion of the Buildings No. 7 and 9 construction projects, Superior failed to pay Plaintiff for the materials Plaintiff provided. (Compl. ¶ 8, R. at 1-4). On August 6, 2003 Plaintiff filed two Affidavits for Mechanic's Lien, one each for Buildings No. 7 and 9, alleging that Superior owed Plaintiff in excess of $500,000. (Compl. ex. 5, 6, R. at 1-4). Plaintiff subsequently filed a Complaint in Foreclosure in the Court of Common Pleas of Union County against Honda Manufacturing, RLI, and Superior, alleging breach of contract by Superior and asserting its mechanic's liens on Buildings No. 7 and 9 (the "Union County litigation"). (Def. Mem. Law. Supp. Mot. Summ. J. ex. 9, R. at 47). RLI filed a Motion for Summary Judgment arguing that Plaintiff's Affidavit for Building No. 7 was filed late, and that the absence of a NOF for Building No. 9 made Plaintiff's Affidavit for that building defective as well as late. (Id. ex. 12). Plaintiff argued in response that the Affidavits were not late, and that no NOF was necessary for Building No. 9 because the original NOF for Building No. 7 covered Building No. 9. (Pl. Mem. Opp'n ex. 9, R. at

50).  The validity of the NOF for Building No. 7 was not questioned during the Union County litigation.  (Id. p. 12; Def. Mem. Law. Supp. Mot. Summ. J. p. 4-5, 13-14, R. at 46).  The court in the Union County litigation denied RLI's Motion for Summary Judgment, and shortly thereafter Plaintiff and the Union County litigation defendants entered into a settlement.  (Pl. Mem. Opp'n p. 2, R. at 50).

Plaintiff then brought this action in the Court of Common Pleas of Franklin County on March 18, 2005 against Lienguard and Defendant.  The only Counts relevant to this Motion are Counts Three and Four, which allege that Lienguard and Defendant committed legal malpractice and breached fiduciary duties to Plaintiff by not properly preparing and serving the NOF for Building No. 7, and not preparing at all a NOF for Building No. 9.  Plaintiff argues that this malpractice forced Plaintiff to compromise its claims in the Union County litigation for "substantially less than they would have been worth" had the NOFs been valid.  (Id. ¶¶ 12-14).  Defendant was served with the Complaint on April 26, 2005, and removed the case to federal court pursuant to 28 U.S.C. § 1441 on May 5, 2005, alleging subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  (Pet. Removal, R. at 1).  After a sufficient period of discovery, Defendant moved for summary judgment as to Counts Three and Four on August 15, 2006, arguing that he owed no duty to Plaintiff to prepare a NOF for Building No. 9, that he did not breach any applicable standard of care as when preparing a NOF for Building No. 7, that any negligence he may have committed did not cause Plaintiff harm, and that Plaintiff was comparatively negligent in filing its Affidavits of Lien late and submitting misleading information on its requests for NOFs.  (R. at 46).  Plaintiff responded on September 7, 2006 (R. at 50), and Defendant submitted a reply on September 20, 2006.  (R. at 51).  The issues are now ripe for adjudication.

## II.   Law Governing Defendant's Motion for Summary Judgment

### A.   Standard for Granting Summary Judgment

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right to trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to judgment as a matter of law.

Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as the inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in material submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418 (6th Cir. 1997).

7

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252.  The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993).  The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence.  Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

### B.     Ohio Legal Malpractice Law

Because this case is before the Court on diversity jurisdiction, the Court will apply Ohio law, as decided by the Ohio Supreme Court, to the substantive claims at issue.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  When a district court, sitting in diversity, is deciding a question of state law, and the state's highest court has not decided the applicable law, then the federal court must consider "all relevant data" in ascertaining the state law.  Garden City, 55 F.3d at 1130.  The Sixth Circuit has concluded that relevant data include that state's appellate court decisions:

> [W]e are mindful that an intermediate appellate court's judgment that announces a rule of law is "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

8

Id. (citations omitted). Further, "relevant date also include the state's supreme court dicta, restatements of the law, law review commentaries, and the majority rule among other states." Id. (citation omitted).

The Ohio Supreme Court definitively set forth the elements of a legal malpractice claim in Vahila v. Hall, 77 Ohio St. 3d 421, 674 N.E.2d 1164 (1997). "[T]o establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." Id. at 427.

An attorney-client relationship can be established by either the existence of a contractual agreement, or the putative client's reasonable belief that an attorney-client relationship existed. Establishing an attorney-client relationship by contractual agreement is relatively simple; it may be shown by submitting proof of a contract. In the absence of a contract, to determine if the attorney owed a duty or obligation to the plaintiff, Ohio courts ask "'whether the putative client reasonably believed that the [attorney-client] relationship existed and that the attorney would therefore advance the interests of the putative client.'" Thompson v. Karr, 182 F.3d 918, No. 98-3544, 1999 WL 519297, *5 (6th Cir. July 15, 1999) (unpublished) (quoting Henry Filters, Inc. v. Peabody Barnes, Inc., 82 Ohio App. 3d 255, 261, 611 N.E.2d 873 (6th Dist. 1992)).

Once a duty has been established, a plaintiff must next show that a breach of that duty occurred. Negligence or willful action or inaction on the part of the attorney constitutes a breach. Questions of breach in the legal malpractice context "generally turn upon whether [the attorney] exercised the reasonable skill, care, and diligence expected of an attorney under like or similar

circumstances," Blackwell v. Gorman, 142 Ohio Misc. 2d 50, 67, 870 N.E.2d 1238 (Ohio Com. Pl. 2007), and require courts to look at what the applicable laws or statutes required in the underlying case or representation. Howard v. Sweeney, 27 Ohio App. 3d 41, 43, 499 N.E.2d 383 (8th Dist. 1985) ("An attorney's acts must necessarily be governed by the law as it existed at the time of the act"). "[A]n attorney will not be held liable for lack of knowledge as to the true state of the law where a doubtful or debateable point is involved," however. Id. Expert testimony as to what the law requires is usually necessary to establish a breach of an attorney's duties, except in cases where the breach is so obvious that a court can determine a breach occurred as a matter of law. See McInnis v. Hyatt Legal Clinics, 10 Ohio St. 3d 112, 113, 461 N.E.2d 1295 (1984); Bloom v. Dieckmann, 11 Ohio App. 3d 202, 203, 464 N.E.2d 187 (1st Dist. 1983).

Proving proximate causation "generally requires evidence that a result was more likely than not to have been caused by [the attorney's] negligence." Huffer v. Cicero, 107 Ohio App. 3d 65, 75, 667 N.E.2d 1031, 1037 (4th Dist. 1995). While this element may require some examination of the merits of the underlying claim, a plaintiff is not required to prove "that he or she would have been successful in the underlying matter." Vahila, 77 Ohio St. 3d at 428. A plaintiff's allegation that they settled a claim for less than it was worth can satisfy the causation element, Monastra v. D'Amore, 111 Ohio App. 3d 296, 302, 676 N.E.2d 132 (8th Dist. 1996), but such a claim usually requires a showing that the attorney has acted unreasonably or has committed malpractice per se. DePugh v. Sladoje, 111 Ohio App. 3d 675, 687, 676 N.E.2d 1231 (2nd Dist. 1996).

## C.     Ohio Comparative Negligence Law

Ohio law recognizes the doctrine of comparative negligence. R.C. §§ 2315.32 to .36. Under this doctrine, the factfinder determines the percentage of each party's negligence. A plaintiff who

10

is contributorily negligent may still recover for his or her injuries provided that the plaintiff's negligence is equal to or less than the defendant's negligence.  R.C. § 2315.33.  If the plaintiff's negligence exceeds the defendant's negligence, however, the plaintiff cannot recover.  R.C. § 2315.35.  "Issues of comparative negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion."  Simmers v. Bentley Constr. Co., 64 Ohio St. 3d 642, 646, 597 N.E.2d 504 (1992).

## III.   Analysis

### A.    Plaintiff's Claims as to Building No. 7

#### 1.    Defendant's Initial Burden

Defendant admits that an attorney-client relationship existed between himself and Plaintiff as to preparing a NOF for Building No. 7.  (Allan Popper Dep. p. 91-92, Def. Mem. Law Supp. Mot. Summ. J. ex. 3, R. at 47).  Defendant argues, however, that he did not breach that duty, that any breach that may have occurred was not the proximate cause of Plaintiff's alleged harm, and that Plaintiff's comparative negligence precludes recovery.  (Def. Mem. Law Supp. Mot. Summ. J. p. 1, R. at 46).

Defendant's duties to Plaintiff are governed by Ohio's mechanics lien statutes, R.C. §§ 1311.01-1311.22.  Specifically, Defendant's duties with respect to preparing a valid NOF are set forth in R.C. § 1311.05(A).  That section provides, in pertinent part, that:

> [A] subcontractor or materialman who performs labor or work upon or furnishes material in furtherance of an improvement to real property and who wishes to preserve his lien rights shall serve a notice of furnishing, if any person has recorded a notice of commencement . . . upon the owner, part owner, or lessee named in the notice of commencement.

The procedure for properly preparing a NOC is governed by R.C. § 1311.04, which provides that:

(A)(1)   Prior to the performance of any labor or work or the furnishing of any materials for an improvement on real property which may give rise to a mechanics' lien . . . the owner, part owner, or lessee who contracts for the labor, work, or materials shall record . . . a notice of commencement in substantially the form specified in division (B) of this section.

. . .

(B)    The notice of commencement required under division (A) of this section shall contain, in affidavit form, all of the following information:

. . .

(3)    The name, address, and capacity of the owner, part owner, or lessee of the real property contracting for the improvement;

(4)    The name and address of the fee owner of the real property, if the person contracting for the improvement is a . . . lessee[.]

The terms "owner," "part owner," and "lessee" are defined in R.C. § 1311.01(A) as "all the interests either legal or equitable, which such person may have in the real estate upon which the improvements are made[.]"

Defendant presents evidence in the form of the NOC for Building No. 7 prepared by American Honda/Honda R & D (Def. Mem. Law Supp. Mot. Summ. J. ex. 6, R. at 47), the work order Plaintiff submitted to Lienguard (id. at ex. 4), and the expert report of attorney Barry Miller ("Miller") (id. at ex. 14) to point out that there is no genuine issue of material fact as to the breach of duty element of Plaintiff's claim.  Defendant argues that American Honda/Honda R & D, as the "lessee who contract[ed] for the . . . materials," R.C. § 1311.04(A)(1), was the proper party to record the NOC.  (Def. Mem. Law. Supp. Mot. Summ. J. ex. 6, R. at 47).  American Honda/Honda R & D, as required by R.C. § 1311.04(B)(3) and (4), listed itself as the "lessee of the real property contracting for the improvement," and also listed Honda Manufacturing as the "fee owner of the real property."  Defendant then concludes that, because the NOC identified Honda Manufacturing as the

12

"owner" and because Plaintiff was negligent in listing Honda Manufacturing as the "jobsite owner" on the work order it submitted to Lienguard, (id. at ex. 4), "[p]ursuant to the plain language of R.C. § 1311.05(A), [Honda Manufacturing] is the proper party upon which to serve the [NOF]." (Id. p. 11). Miller's expert report agrees with this conclusion. Miller opines that proper preparation of a NOF is dependent on the content of the NOC, and because the NOC listed Honda Manufacturing as "owner," service of the NOF on Honda Manufacturing was proper. (Id. ex. 14). This evidence is sufficient to satisfy Defendant's initial burden of showing that no genuine issue as to any material fact exists and that he is entitled to judgment as a matter of law. Leary, at 897.

Defendant also argues that, even if he did breach a duty to Plaintiff, any such breach was not the proximate cause of the harm Plaintiff allegedly suffered. Defendant presents evidence in the form of documents from the Union County litigation, including Plaintiff's response to RLI's motion for summary judgment (Def. Mem. Law Supp. Mot. Summ. J. ex. 13, R. at 47),[1] excerpts from Cindy Westover's (Plaintiff's credit manager) deposition, (id. ex. 7), and Miller's expert report (id. ex. 14), in support of this argument.

Plaintiff has stated in the Union County litigation that the "only dispute over [Plaintiff's] Affidavit of Lien relates to the last date [Plaintiff] provided material to the project. . . . In no other respects does [RLI] argue that [Plaintiff] failed to perfect its mechanic's lien for Building #7." (Id. ex. 13 p. 9-10, R. at 47) (emphasis in original). Contrary to Defendant's assertions, however, this statement does not demonstrate a lack of causation between a potentially faulty NOF for Building

---

[1] Plaintiff's statements in this response are admissible as admissions by a party-opponent under FED. R. EVID. 801(d)(2)(A). Defendant, however, has also submitted RLI's motion for summary judgment in the Union County litigation. RLI is not a party to this case, and therefore the Court will not consider the statements in RLI's motion in the Union County litigation.

No. 7 and a reduced settlement in the Union County litigation. When viewed in the light most favorable to Plaintiff, as it must be viewed, see Matsushita, 475 U.S. at 587-88, this statement simply means that the only basis RLI asserted to attack Plaintiff's Affidavit of Lien was the Affidavit's timeliness. It does not say anything about Plaintiff's knowledge of the validity of the NOF for Building No. 7, and standing alone this statement is insufficient to satisfy Defendant's initial burden on this issue.

Defendant also argues that Plaintiff's comparative negligence in not timely submitting its Affidavit of Lien precludes a finding of causation. To support this argument, however, Defendant simply states that Plaintiff's "Affidavits of Lien were not timely served making the liens so defective that Plaintiff could not recover," (Def. Mem. Law Supp. Mot. Summ. J p. 18, R. at 46), and attaches documents from the Union County litigation, particularly RLI's Motion for Summary Judgment. (Id. at ex. 12). This is insufficient to carry Defendant's initial burden of presenting such compelling evidence of comparative negligence that reasonable minds could reach but one conclusion. Simmers, 64 Ohio St. 3d at 646. While RLI, in the Union County litigation, did indeed allege that Plaintiff's Affidavits were untimely, this fact was never proven. The parties in the Union County litigation disputed when, exactly, Plaintiff last supplied materials to Superior for use in the construction projects, which would control when Plaintiff was able to file valid Affidavits. (Id. at ex. 12 p. 13, ex. 13 p. 9). This type of factual dispute is not appropriately resolved on a motion for summary judgment, a reality the judge presiding over the Union County litigation apparently realized when denying RLI's Motion. Whether Plaintiff was comparatively negligent in filing its Affidavits late is a factual dispute the factfinder must resolve.

Defendant, however, has also presented excerpts from Cindy Westover's ("Westover")

deposition that demonstrate a lack of causation.  Westover, who was one of Plaintiff's credit managers and participated in the settlement mediation discussions, states in her deposition testimony that Plaintiff was not aware that there was a potential problem with the NOF for Building No. 7 until after the Union County litigation was settled, when Plaintiff's expert, Mark Decker, provided his written report to Plainitff.  (Cindy Westover Dep. p.166-69, Def. Mem. Law Supp. Mot. Summ. J ex. 7, R. at 47).  When she attended the mediation, Westover believed that Plaintiff had a valid and enforceable lien on Building No. 7, which would include a valid NOF.  (Id.).  The following exchange from Westover's deposition is particularly pertinent:

> Q.    Do you have any reason to believe that the notice of furnishing that
>       [Defendant] prepared was the basis for settling the claims [in the Union
>       County litigation] for less than the value of the liens?
>
> . . .
>
> A.    No.

(Id. at 169).  This is clearly sufficient to satisfy Defendant's initial burden to demonstrate that there is no genuine issue of material fact as to the causation element of Plaintiff's claim regarding Building No. 7.

### 2.    Plaintiff's Burden in Response

Plaintiff must now present evidence in response that demonstrates a genuine issue of material fact does indeed exist as to either the breach or causation elements of its claims.

Plaintiff presents attorney Mark Decker's (Decker) expert reports to show that Defendant breached his duties to Plaintiff.  (Pl. Mem. Opp'n ex. 3, 3A, R. at 50).  Decker's reports assert that the term "owner," as used in the mechanic's lien statutes, does not refer to the fee owner of the property, as Defendant has argued.  Instead, Decker states that "owner" refers to the owner of the improvement, rather than the fee owner of the property, and that the owner of the improvement is

the proper party to be served with the NOF.  (Id.).  Decker states that the reference to the fee owner in this case is required because American Honda/Honda R & D is a lessee, and the statutory scheme requires the fee owner to be listed on the NOC when the owner of the improvement is a lessee.  (Id.). Plaintiff argues that requiring the NOF to be served on the fee owner, as Defendant argues, rather than the owner of the improvement, would subvert the purpose of a mechanic's lien, which is "to give the materialman an interest in the improvement as security for his labor and materials."  (Pl. Mem. Opp'n p. 10, R. at 50).

The Court agrees with Plaintiff's interpretation of the statute, and finds that a reasonable jury could conclude that Defendant breached his duties to Plaintiff.  When interpreting a statute, courts must look to the whole act, rather than separate provisions in isolation, see, e.g., John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 94-95 (1993), and so the Court will examine the relevant statutory provisions, R.C. §§ 1311.04 and .05, together.

R.C. § 1311.05(A) requires a subcontractor or materialman to serve a NOF "upon the owner, part owner, or lessee named in the notice of commencement."  R.C. § 1311.05(A) makes it clear that a NOF is properly served when it is served on 1) an "owner"; 2) a "part owner"; or 3) a "lessee"; who is listed in the NOC.  R.C. § 1311.04, which governs the contents of the NOC, refers to owners, part owners, or lessees in only one place - R.C. § 1311.04(B)(3), which requires the NOC to list the "name, address, and capacity of the owner, part owner, or lessee of the real property contracting for the improvement."

Reading the statute under ordinary rules of grammar and punctuation, see, e.g., United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989), it is clear that the modifier "contracting for the improvement" refers to the three classes of persons immediately preceding the modifier; that is,

16

"owners," "part owners," or "lessees." Reading R.C. §§1311.04 and .05 together, then, means that a NOF is properly served when it is served on 1) the owner contracting for the improvement as named in the NOC; 2) the part owner contracting for the improvement as named in the NOC; or 3) the lessee of the real property contracting for the improvement as named in the NOC. Plaintiff is correct that R.C. §§ 1311.04 and .05 require the NOF to be served on the entity contracting for the improvement, instead of the fee owner of the property. This is not a doubtful or debateable point of law that would excuse Defendant's breach, see Howard, 27 Ohio App. 3d at 43, because a plain language reading of the statute makes it readily apparent that the contracting party must be served with the NOF.

The NOC prepared by American Honda/Honda R & D listed American Honda/Honda R & D as the contracting party. A simple examination of the NOC would have led Defendant to serve the NOF on the correct party. A reasonable jury, then, could certainly conclude that Defendant, by not serving the NOF on American Honda/Honda R & D, breached his duties to Plaintiff. Summary judgment is inappropriate on the issue of breach.

Defendant's argument concerning comparative negligence does not compel a different result. True, the work order Plaintiff submitted to Lienguard and forwarded to Defendant identifies Honda Manufacturing as the "jobsite owner," and does not make it clear that American Honda/Honda R& D should be served with the NOF. But Defendant also had the duty to examine the completed NOF and verify its accuracy. This duty included examining the NOC, which did identify American Honda/Honda R & D as the contracting party. It is for a jury to decide if Plaintiff's act of submitting an erroneous work order is more negligent than Defendant's failure to comply with the statutory requirements. Summary judgment is inappropriate on the issue of breach.

Plaintiff, however, has failed to show that material issues of fact remain as to the last element of Plaintiff's malpractice claim, causation.  Defendant introduced strong evidence of a lack of causation, most notably in the form of Westover's statements that Plaintiff was not aware of potential problems with the NOF for Building No. 7 until <u>after</u> the Union County litigation settled, and her belief that the NOF was not the reason that the Union County litigation settled.  To rebut this evidence, Plaintiff merely states that the Union County defendants "could have raised this weakness [with the NOF]" had the Union County litigation made it to the trial stage.  (Pl. Mem. Opp'n p. 12, R. at 50).  Plaintiff also introduces deposition testimony from Charles Misner, Plainitffs' central Ohio area manager.  Misner testified that the reason Plaintiff settled the Union County litigation was that "it was the best decision, best dollar that we felt we could reach."  (Charles Misner Dep. p. 66, Pl. Mem. Opp'n ex. 7, R. at 50).

This is insufficient to show that a genuine issue of material fact exists as to whether Defendant's faulty NOF for Building No. 7 caused Plaintiff to settle the Union County litigation for less than Plaintiff's claims were worth.  Plaintiff may not rest on the mere "metaphysical doubt" that the Union County litigation defendants "may" have raised an issue with the NOF had the case gone to trial.  <u>See</u> <u>Moore</u>, 8 F.3d at 340.  Misner's deposition testimony does not create a genuine issue of material fact as, even in the light most favorable to Plaintiff, it indicates that Plaintiff's settlement decision was a business decision rather than a realization that a defective NOF had weakened Plaintiff's legal position.  No reasonable jury could find that Defendant's faulty NOF for Building No. 7 caused Plaintiff to settle the Union County litigation on this evidence.  Defendant has shown that there is no genuine issue of material fact on the issue of causation and Plaintiff has failed to rebut that showing.  Summary judgment for Defendant is appropriate as to Plaintiff's claims relating

18

to Building No. 7.

**B.      Plaintiff's Claims as to Building No. 9**

**1. Defendant's Initial Burden**

Defendant has moved for summary judgment on Plaintiff's claims as to Building No. 9 on the ground that Defendant owed no duty to Plaintiff to prepare a NOF for Building No. 9.  Defendant presents excerpts from Janice Lundquist's and Defendant's depositions.  Both Lundquist and Defendant testified that neither Lienguard nor Plaintiff ever contacted Defendant about preparing a NOF for Building No. 9.  (Lundquist Dep. 238-39, Popper Dep. p. 115, Def. Mem. Law Supp. Mot. Summ. J. ex. 2, 3, R. at 47).   Additionally, Defendant presents Westover's deposition testimony, in which she states that Plaintiff never sent a request for a NOF for Building No. 9 to Defendant directly, and never had a contract with Defendant to prepare a NOF for Building No. 9. (Westover Dep. pp. 136, 139, 145-46, Def. Mem. Law Supp. Mot. Summ. J. ex. 7, R. at 47). Defendant argues that if Plaintiff never contacted Defendant and requested that Defendant prepare a NOF for Building No. 9, then no attorney-client relationship was ever created between Plaintiff and Defendant, and Defendant could not breach any duty to Plaintiff.  The Court finds that this evidence is sufficient to satisfy Defendant's initial burden of showing that there is no genuine issue as to the material fact of whether Defendant owed Plaintiff a duty to prepare a NOF for Building No. 9.[2]

**2.      Plaintiff's Burden in Response**

---

[2] Defendant has also argued that he is entitled to summary judgment because of Plaintiff's comparative negligence in filing its Affidavit of Lien late.  However, for the same reasons discussed in relation to the claims regarding Building No. 7, see supra p. 13-14, Defendant's arguments do not demonstrate the lack of a genuine issue of material fact.

Plaintiff concedes that it never directly contacted Defendant with a request to prepare a NOF for Building No. 9. (Westover Dep. p. 136, Pl. Mem. Opp'n. ex. 2, R. at 50). However, Plaintiff argues that, based on its previous experiences with Defendand and Lienguard, Plaintiff reasonably believed that it enjoyed an attorney-client relationship with Defendant. Consequently, Plaintiff argues that Defendant had a duty to review all requests for NOFs presented to Lienguard, and to protect Plaintiff's interests. (Pl. Mem. Opp'n p. 6, R. at 50).

Both Westover and Kathy Compton, Plaintiff's credit managers, testified that everything they had ever sent to Lienguard had been prepared and signed by Defendant. From Plaintiff's perspective, Defendant and Lienguard were "one and the same." (Westover Dep. p. 136, 178, Compton Dep p. 93, Pl. Mem. Opp'n. ex. 2, 4, R. at 50). Plaintiff also points to the legal services agreement between Defendant and Lienguard, which provided that Defendant was to handle all of Lienguard's legal work. (Popper Dep. p. 13, Pl. Mem. Opp'n. ex. 5, R. at 50). Plaintiff argues that this agreement supports the conclusion that, when Plaintiff approached Lienguard with a request to file a NOF for Building No. 9, Plaintiff was reasonable in believing that it was also approaching Defendant and that an attorney-client relationship was formed.

Viewing this evidence in the light most favorable to Plaintiff, as this Court must, see Matsushita, 475 U.S. at 587-88, the Court finds Plaintiff has not satisfied its burden in response to Defendant's motion. It is undisputed that Defendant was never contacted by anyone from either Plaintiff or Lienguard about preparing a NOF for Building No. 9. It was Lienguard that specifically told Plaintiff that it would not prepare a NOF for Building No. 9, not Defendant. And although Westover and Compton may have believed that Defendant and Lienguard were "one and the same," statements from Westover's deposition undermine Plaintiff's position. When asked about the nature

20

of the attorney-client relationship between Plaintiff and Defendant, Westover gave the following testimony:

> Q.   When do you contend that the [attorney-client relationship between Plaintiff and Defendant] was formed?
> A.   When [Defendant] signed the notice of furnishing.
> Q.   Which one?
> A.   For any job.  Every time he does it.
> Q.   Do you think that it's an ongoing attorney-client relationship or is it a job-by-job relationship?
> . . .
> A.   Well, I think it's a - I think it would be a job-by-job [relationship].
> Q.   So at the conclusion of each time [Defendant] provides services, that's the end of [Defendant's] relationship with [Plaintiff], correct, until the next job comes along?
> A.   Right.

(Westover Dep. p. 148, Def. Mem. Law Supp. Mot. Summ. J. ex. 7, R. at 47).

Westover's belief that an attorney-client relationship between Plaintiff and Defendant was not formed until Defendant signed the NOF undermines Plaintiff's position that approaching Lienguard with a request for a NOF was the same as approaching Defendant.  The undisputed fact is that neither Lienguard nor Plaintiff ever approached Defendant about preparing a NOF for Building No. 9.  Because Plaintiff agrees that Defendant never knew about Building No. 9 and never signed a NOF for it, (see Westover Dep. p. 136, Pl. Mem. Opp'n. ex. 2, R. at 50), Plaintiff could not have reasonably believed that simply approaching Lienguard meant that an attorney-client relationship with Defendant had been formed.  Furthermore, Westover's belief that Plaintiff and Defendant's attorney-client relationship was limited to a "job-by-job" basis undermines Plaintiff's arguments that, based on its past interactions with Defendant, Plaintiff was reasonable in believing that it enjoyed an attorney-client relationship with Defendant.

On the evidence presented, the Court finds that no reasonable jury could conclude that

Plaintiff's beliefs were reasonable.  Thus, a reasonable jury could only conclude that no attorney-client relationship was formed.  See Henry Filters, 82 Ohio App. 3d at 261.  Defendant had absolutely no involement with regard to preparing a NOF for Building No. 9, and Westover's deposition statements reveal that Plaintiff could not reasonably have believed that approaching Lienguard meant that an attorney-client relationship was formed or already existed with Defendant.  Because Plaintiff has not presented evidence of a genuine issue of material fact to rebut Defendant's motion, summary judgment for Defendant is appropriate.

**IV.    Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment (R. at 46) is **GRANTED**.

**IT IS SO ORDERED.**


Date: November 27, 2007                                  **/s/ John D. Holschuh**
                                                         John D. Holschuh, Judge
                                                         United States District Judge


22